**Willie BENTLEY, Jr., Plaintiff,**

v.

**UNITED REFINING CO. OF PENNSYLVANIA,**
**Defendant.**

No. 99–CV–6640.

United States District Court,
W.D. New York.

May 10, 2002.

John W. Stewart, Jr., Stewart & Stewart Law Offices, Hilton, NY, for Plaintiff.

Charles S. Carra, R. Scott DeLuca, Damon & Morey, Buffalo, NY, for Defendant.

## DECISION and ORDER

SIRAGUSA, District Judge.

This matter is before the Court on an application by defendant, United Refining Co. of Pennsylvania for judgment as a matter of law pursuant to Fed.R.Civ.P. 50(a). For the reasons stated below, the application is granted.

## BACKGROUND

This case involves a claim by plaintiff, Willie Bentley, Jr., an African–American, pursuant to 42 U.S.Code § 1981, that he was denied service in one of defendant's retail stores based upon his race. The matter was tried before a jury from April 8, 2002 through April 11, 2002. At the close of plaintiff's case, defendant, pursuant to Fed.R.Civ.P. 50(a), moved for judgment as a matter of law. The Court, after hearing oral argument both in support of and in opposition to the application, reserved decision. At the close of the proof, defendant renewed its motion for judgment as a matter of law. The Court continued to reserve pending a determination from the jury. On April 11, 2002, the jury returned a verdict in favor of the plaintiff, awarding him five thousand dollars ($5,000.00) in compensatory damages and one hundred thousand dollars ($100,000.00) in punitive damages. However, the Court declined to enter judgment at that time, but rather set a briefing schedule and an oral argument date on defendant's pending Rule 50 application.

## DISCUSSION

### A. Standard

Fed.R.Civ.P. 50(a) allows a defendant, at any time before a case has been submitted to the jury, to move for judgment as a matter of law. The Circuit has explained the standard applicable to the resolution of a Rule 50(a) application as follows:

> The court may grant the motion if the non-moving party has failed to adduce a "legally sufficient evidentiary basis" to support his claim. Fed.R.Civ.P. 50(a). *Piesco v. Koch,* 12 F.3d 332, 340 (2d Cir.1993). Thus, a district court may grant a motion for judgment as a matter of law where there is such a complete absence of evidence that no reasonable juror could find in favor of the non-moving party. *Samuels v. Air Transport Local 504,* 992 F.2d 12, 14 (2d Cir. 1993). In evaluating the merits of the motion, "the court must view the evidence in a light most favorable to the nonmovant and grant that party every reasonable inference that the jury might have drawn in its favor."

*Wimmer v. Suffolk County Police Department,* 176 F.3d 125, 134 (2d Cir.1999)

### B. Evidence in A Light Most Favorable to the Plaintiff [1]

On December 8, 1999 at about 5:30 to 6:00 p.m., plaintiff, an African–American, stopped at defendant's Red Apple Kwik Fill store on Main Street in Mt. Morris, New York. He pumped five dollars ($5.00) worth of gas into his vehicle and then went inside the store to pay for the gas and purchase lottery tickets. Upon entering the store, he got into a line with six or seven people ahead of him. There was only one line. As he waited in that line, he saw other customers making purchases in addition to gas, including lottery tickets. In fact, he observed the customer immedi-

---

1. The Court's consideration is, of course, limited to the evidence adduced by plaintiff on his direct case.

ately ahead of him in line pay for gas and buy lottery tickets. The female clerk behind the counter, waiting on the customers, was Charlotte Breemes ("Breemes"). While plaintiff waited in line, a man joined Breemes behind the counter, but he did not wait on any customers. After about fifteen minutes, plaintiff arrived at the head of the line. He then indicated to Breemes that he wanted to pay for gas and purchase three dollars ($3.00) worth of Quik Pick lottery tickets. However, Breemes told plaintiff to get to the back of the line. When plaintiff responded with "excuse me," Breemes asked him, "could you get on the side of the line so I can get the people who are purchasing gas?" Plaintiff said, "no, I'm not getting out of line; I'm purchasing gas." Breemes then stated, "we don't make money off the lottery machine," to which plaintiff responded, "If you don't make money off the lottery machine, then you shouldn't have it, all I want to do is pay for my gas, pick up three dollars ($3.00) worth of lottery tickets, and leave." At that time, Breemes started yelling at plaintiff. Plaintiff told her, "ma'am, you should be careful who you're talking to like that," to which Breemes said, "I don't care." Breemes

continued to argue with plaintiff, during which time about seven or eight customers accumulated in line behind plaintiff. Finally, Breemes allowed plaintiff to pay for his gas and purchase the lottery tickets he desired. Plaintiff told her, though, he was going to complain to her manager the next day and Breemes responded by saying, "do what you have to do." The entire exchange between plaintiff and Breemes took about six to seven minutes.

While Breemes was rude to plaintiff, she never used any racial epithets. However, at the time of the incident, plaintiff was the only African–American in the store, and approximately five years earlier, while working at the same Red Apple Kwik Fill, Breemes, after waiting on an African–American customer stated, "I hate niggers."

## C. The Court's Decision to Reserve

In deciding to reserve, at the close of plaintiff's direct case, on defendant's application for judgment as a matter of law, the Court indicated that it had a question only as to one element of plaintiff's claim, that being "denial of service."[2] On this issue,

**2.** In its final charge, the Court instructed the jury as follows:

In order to prevail on his claim the plaintiff must prove each of the following three elements by a preponderance of evidence:

1) That he is a member of a racial minority. As to this element, I instruct you that there is no dispute, since the plaintiff is obviously African–American;

2) That the defendant denied him service. In this regard, I instruct you that the defendant would be responsible for the conduct of its employee, Charlotte Breemes. Further, I instruct you that a delay in service which alters a fundamental characteristic of the service provided by a store, business or establishment is equivalent to the denial of service;

3) That the defendant had an intent to discriminate on the basis of race, that is,

that plaintiff's race was a motivating factor in defendant's action regarding service. Again, I remind you that the defendant would be responsible for the conduct of its employee, Charlotte Breemes.

I further instruct that in determining whether or not the plaintiff has proven the required elements, as I have just explained them to you, you should not consider whether the reason given by the defendant for Ms. Breemes' request for the plaintiff to step out of line constitutes a good or bad business policy. That is, you may not return a verdict for the plaintiff just because you may disagree with the defendant's policy or believe it should have been otherwise. Rather, the plaintiff must prove by a preponderance of evidence that the defendant in effect denied service by Ms. Breemes and that race was a motivating factor in Ms.

the Court asked plaintiff's counsel if his theory on this element was denial of service or delay in service that altered a fundamental characteristic of service. In response, plaintiff's counsel indicated that "our position is that this was an outright denial of service." [3]

## D. Analysis

■ To the extent that the determination of defendant's Rule 50(a) application turns on plaintiff's contention that the evidence adduced on his direct case, when viewed in the light most favorable to him, is sufficient for a reasonable juror to find that he was "denied service," the application must necessarily be granted. Plaintiff, simply put, was not denied service. His service may have been delayed and he may have received it in a rude and unprofessional fashion, but it was clearly not denied. When plaintiff arrived at the Red Apple Kwik Fill on Main Street in Mt. Morris, New York on December 8, 1999, his intention was to buy gas and lottery tickets. When he left some twenty-two minutes later (fifteen minutes of which was waiting his turn in line), he had purchased both the gas and lottery tickets. In fact, the two cases cited by plaintiff, presumably for the purpose that they are pertinent on this issue, are inapposite to his position. In *Hampton v. Dillard Department Stores, Inc.,* 18 F.Supp.2d 1256 (D.Kan.1998), an African–American store patron was detained on suspicion of shoplifting by the store's security officer, who thereby interfered with her ability to exercise her contractual right to redeem a coupon for a free perfume sample. In *Lizardo v. Denny's, Inc.,* 270 F.3d 94 (2d

Cir.2001), the Second Circuit affirmed the district court's determination that denial of service to group of Asian–Americans, on the ground that a member of the group was allegedly being disruptive while waiting to be seated, was not discriminatory.

■ Even assuming plaintiff's position that he was denied service was ill-advised semantics, and that what he really meant was the delay in service was tantamount to a denial because it altered a fundamental characteristic of the service, and on that basis a reasonable juror could find in his favor, he, nonetheless fails. This case is clearly distinguishable from those in which courts have found a delay, or something less than the outright denial of service, to be actionable. For example, in *Bobbitt v. Rage, Inc.,* 19 F.Supp.2d 512 (W.D.N.C.1998), the district court found that the allegations of the Hickory plaintiffs went beyond poor or merely delayed service. Rather by requiring them to pre-pay for food, the restaurant altered a fundamental characteristic of service. Likewise, in *Hill v. Shell Oil Co.,* 78 F.Supp.2d 764 (N.D.Ill.1999), the practice at Shell-brand gas stations of requiring African–American customers to pre-pay for gas, while white customers were allowed to post-pay, was found by the district court to be sufficient to support a § 1981 cause of action. Similarly, in *McCaleb v. Pizza Hut of America, Inc.,* 28 F.Supp.2d 1043 (N.D.Ill.1998), the district court determined, that the fact that the African–American plaintiffs received the pizzas they ordered, did not preclude their § 1981 claim, since, in contrast to white customers, they were not seated, provided with utensils, or asked if they wanted to

Breemes' conduct. If the plaintiff fails to prove either of these elements by a preponderance of evidence, you must find for the defendant. Only if the plaintiff proves each of the required elements, as I have just

explained them to you, may you return a verdict for the plaintiff.

**3.** In fact, plaintiff, during his summation, argued denial, not delay of service.

order drinks. On the other hand, mere delay, even coupled with discourteous treatment, poor service, or racial animus, is insufficient to sustain a § 1981 claim. *Morris v. Office Max, Inc.*, 89 F.3d 411 at 414 (7th Cir.1996); *Bobbitt v. Rage, Inc.*, 19 F.Supp.2d at 517–518; *Hampton v. Dillard Department Stores, Inc.*, 18 F.Supp.2d at 1259–1260; *Anderson v. Ross Stores, Inc.*, 2000 WL 1585269 at *7 (N.D.Cal.2000).

Here, plaintiff produced no evidence upon which a reasonable juror could find that the six to seven minute delay he experienced altered a fundamental characteristic of the service to which he was entitled. Despite this delay, plaintiff maintained his position in line and completed his intended purchases.

## CONCLUSION

Therefore, defendant's application for judgment as a matter of law pursuant to Fed.R.Civ.P. 50(a) [# 62] is granted in its entirety. Accordingly, the Court directs that, pursuant to Fed.R.Civ.P. 58, judgment be entered in favor of defendant, United Refining Co. of Pennsylvania.

IT IS SO ORDERED.